IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| In re: Bausch & Lomb Contact Lens Solution Products Liability Litigation | ) ) ) ) | MDL No. 1785 |
| This Document Relates To: | ) ) | |
| JOSEPH GORMAN      /<br>Plaintiff, | ) ) ) | C/A NO. 2:08-2172-DCN |
| v. | ) ) ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| BAUSCH & LOMB, INC.,<br>Defendant, | ) ) ) | |

Plaintiff, by and through his attorneys brings this action and alleges the following upon information and belief:

## NATURE OF THE ACTION

1. This is an action to recover damages for personal injuries suffered by Plaintiff as a direct and proximate result of the Defendant Bausch & Lomb Incorporated's (hereinafter referred to alternatively as "Defendant" or "Bausch & Lomb"), negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, advertising, promoting, marketing, distribution, labeling, and/or sale of Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution (hereinafter referred to as "ReNu with MoistureLoc" or the "subject product").

## JURISDICTION AND VENUE

2. At all times material hereto, ReNu with MoistureLoc was designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold by the Defendant herein.

1

3. This Court has jurisdiction pursuant to 28 United States Code Section 1332, in that Plaintiff is a citizen of a State which is different from the State where Defendant is incorporated and has its principal places of business.

4. The amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs.

5. At all times relevant hereto, Bausch & Lomb was engaged in the business of designing, developing, manufacturing, testing, packaging, advertising, promoting, marketing, distributing, labeling, and/or selling the subject product.

6. Bausch & Lomb placed the subject product into the stream of interstate and worldwide commerce.

7. As a direct and proximate result of the Defendant placing the subject product into the stream of commerce, Plaintiff has suffered and will continue to suffer injuries including, without limitation, physical, mental and economic loss, pain and suffering, and will continue to experience such injuries indefinitely.

8. Plaintiff has incurred and will incur significant medical, hospital, monitoring, rehabilitative and pharmaceutical expenses.

9. Upon information and belief, at all relevant times, Bausch & Lomb was present and doing business in the State of South Carolina.

10. At all relevant times, Bausch & Lomb transacted, solicited, and conducted business in the State of South Carolina and derived substantial revenue from such business.

11. At all relevant times, Bausch & Lomb expected or should have expected that its

acts would have consequences within the United States of America, and the District of South Carolina, in particular.

12.     Venue is proper in this judicial district for pretrial procedures pursuant to the December 18, 2006 Pretrial Order in MDL No. 1785.

## PARTIES

13.     Plaintiff Joseph Gorman is a citizen of the United States and a resident of the State of Minnesota.

14.     As a direct and proximate result of Joseph Gorman's use of ReNu with MoistureLoc, he suffered from a severe eye infection and required extensive medical treatment.

15.     Bausch & Lomb is a corporation incorporated under the laws of New York with its principal place of business located at One Bausch & Lomb Place, Rochester, New York 14604-2701.

## FACTUAL ALLEGATIONS

16.     Defendant designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold the contact lens eye care product known as ReNu with MoistureLoc.

17.     The subject product is a multi-purpose solution for cleaning, rinsing, disinfecting, and storing soft contact lenses.

17.     In or about February 2006, Bausch & Lomb suspended sales of the subject product in Asia amidst an increase of incidents of fusarium keratitis and requests by Asian officials to pull the subject product from the shelves.

18.     Fungal keratitis is a serious eye infection that can develop through the whole depth of the cornea. Symptoms of fungal keratitis include eye pain, eye discomfort, decrease in vision

and light hypersensitivity. The infection can require prolonged drug therapy with antifungal medication. Those infected with fungal kerititis, who do not receive or who do not respond to medical treatment, may experience significant loss of vision and will usually require surgical intervention, including corneal transplantation.

19. An increase in incidents of patients diagnosed with fusarium keratitis were reported among contact lens users in Asia beginning in November 2005. Singapore health officials noticed an increase in reports of infection in January and discovered 39 cases involving contact lens users from 2005 to February 2006. Cases were also reported in Malaysia and Hong Kong.

20. Hong Kong officials specifically asked Bausch & Lamb to pull the subject product from the shelves.

21. In response to requests by Asian officials to pull the product from the shelves, Bausch & Lomb suspended sales of the subject product in Hong Kong and Singapore in February 2006.

22. Despite the fact that Bausch & Lomb suspended sales of the subject product in February 2006, Singapore's Ministry of Health issued a press release in April 2006 stating the following in relevant part:

> "There has been an additional 36 cases of fungal corneal infection reported since the last update in late February (39 cases). In total, 75 cases of fungal corneal infection (which tested positive for Fusarium) with a history of contact lens use have been reported for the period 1 Nov 2004 to 12 April 2006. This compares with two reported cases from 1 Jan to 31 Oct 2004. In view of the potentially serious adverse visual consequences of fungal corneal infection, the Ministry of Health had on 17 Feb 2006 advised all contact lens users as a precautionary measure to discontinue the use of Bausch and Lomb's ReNu multipurpose contact lens solution for the time being."

***

4

> "A comprehensive case-control study (comparing contact lens users with infection and contact lens users without conical infection) was undertaken in Feb-Mar 2006 to investigate risk factors for the spike in fungal corneal infection. <u>The study found a strong association between corneal infection and the use of ReNu solution.</u> This association remained strong even after taking into consideration socio-demographic, lens, hygiene and environmental factors. The findings are also consistent with recent observations made in the US and Hong Kong.

(emphasis added).

23. On March 8, 2006, the Centers For Disease Control and Prevention (the "CDC") in the United States received a report from an ophthalmologist in New Jersey regarding three patients, all soft-contact lens users, who had been diagnosed with fusarium keratitis.

24. According to the CDC, in addition to those incidents reported by the New Jersey ophthalmologist, "initial contact with several corneal disease specialty centers in the United States have also seen recent increases in fusarium keratitis."

25. In a report dated April 10, 2006, entitled "Fusarium Keratitis - Multiple/States, 2006," the CDC stated that as of April 9, 2006, 109 cases of suspected fusarium keratitis are under investigation by CDC and public health authorities in 17 states of the U.S. including California, Connecticut, Florida, Georgia, Iowa, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Dakota, Ohio, Pennsylvania, Tennessee, Texas, and Vermont.

29. The subject product, upon information and belief, contains a defect in its chemical composition, which is either inherent to the subject product, itself, or results from contaminants found in the facility at which it is manufactured.

30. On or about April 10, 2006, the U.S. Food and Drug Administration ("FDA") and the CDC issued a joint press release, "alerting health care professionals and their patients who wear soft contact lenses to an increasing number of reports in the United States of rare but serious fungal

infections in the eye that can cause permanent loss of sight." The press release indicated further that, "[s]ome patients have reported a significant loss of vision, resulting in the need for a corneal transplant." The FDA indicated that a fungus called *Fusarium* was identified as the cause of the reported infections.

31. Thereafter, Bausch & Lomb announced the suspension of shipments of the subject product to retailers in the United States due to reports of fungal keratitis infections in contact lens wearers who used the subject product.

32. On or about April 13, 2006, Bausch & Lomb requested that U.S. retailers remove ReNu with MoistureLoc from their shelves, and recommended that consumers switch to another lens care solution, until the conclusion of the investigation into reports of fungal keratitis infections among contact lens wearers in the United States.

33. The FDA issued a statement on or about April 14, 2006 supporting Bausch & Lomb's decision to withdraw the subject product from the market during the pending investigation.

34. On or about May 15, 2006, the FDA issued another press release that stated, in part, "based on this scientific and epidemiological data suggesting that ReNu with MoistureLoc may increase susceptibility to Fusarium, Bausch & Lomb has decided to permanently remove the ReNu with MoistureLoc product worldwide."

35. Thereafter, on or about May 15, 2006, Bausch & Lomb announced a worldwide recall of ReNu with MoistureLoc, concluding the subject product's formula may increase the risk of fungal eye infections in certain situations.

36. Plaintiff used the subject product for its intended purpose.

37. As a direct and proximate result of Plaintiff's use of ReNu with MoistureLoc, he was diagnosed with a severe eye infection and required extensive medical treatment.

38. At all times relevant herein, Plaintiff was unaware of the serious side effects and dangerous properties of the subject product as set forth herein.

39. Had the Defendant properly disclosed the risks associated with the subject product, Plaintiff would not have used it.

40. As alleged herein, as a direct and proximate result of the Defendant's negligence and wrongful conduct, and the unreasonable dangerous and defective characteristics of the subject product, Plaintiff suffered severe physical injuries and has endured substantial pain and suffering, was required to pay for necessary healthcare, attention and services, along with incidental and related expenses, and will be required to pay for additional necessary healthcare, attention and services, along with additional incidental and related expenses to monitor her condition. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## FIRST CAUSE OF ACTION - NEGLIGENCE

41. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

42. At all times material hereto, the Defendant had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, development, manufacture, testing, inspections packaging, promotion, marketing, distribution, labeling, and/or sale of the subject product.

43. The Defendant breached its duty of reasonable care to Plaintiff in that it negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold the subject product.

44. Plaintiff's injuries and damages, as alleged herein, were and are the direct and proximate result of the carelessness and negligence of the Defendant.

45. The Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of the Defendant's failure to exercise reasonable and ordinary care.

46. The injuries sustained by the Plaintiff were caused by or were contributed to by Defendant's negligence, recklessness, gross negligence, wantonness, willfulness, and conscious and callous disregard for the safety of the consumers and the public, including Plaintiff, on the part of Defendant in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of the subject product as being safe and effective for the purposes intended and by inducing the public, including the Plaintiff, to believe that the subject product was safe and effective for its intended purposes.

47. As a proximate result of the aforementioned negligence of Defendant, Plaintiff suffered personal injuries and harm, was required to pay for necessary healthcare, attention and services, along with incidental and related expenses, and will be required to pay for additional necessary healthcare, attention and services, along with additional incidental and related expenses to monitor Plaintiff's condition.

48. The conduct of Defendant was so willful, wanton, malicious, reckless and in disregard for the consequences as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury, and merits the imposition of punitive damages.

49. As a direct and proximate result of Defendant's negligence, Plaintiff suffered severe physical injuries and has endured substantial pain and suffering, was required to pay for necessary healthcare, attention and services, along with incidental and related expenses, and will be required to pay for additional necessary healthcare, attention and services, along with additional incidental and related expenses to monitor their condition. Plaintiff has suffered and will continue to suffer

economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## SECOND CAUSE OF ACTION - STRICT LIABILITY

50.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

51.     Defendant designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold the subject product in a condition which rendered it unreasonably dangerous due to its propensity to cause fungal eye infections.

52.     The subject product manufactured and/or supplied by Defendant was defective in manufacture or construction in that, when it left the hands of Defendant, it deviated in a material way from Defendant's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula.

53.     The subject product manufactured and/or supplied by Defendant was defective in design in that, when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design and/or formulation.

54.     Alternatively, the subject product supplied by Defendant was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

55.     The subject product was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks and reactions associated with the subject product, notwithstanding Defendant's knowledge of such risks and reactions.

56.     The aforementioned defects existed when Defendant placed the subject product into

the stream of commerce.

57. Plaintiff's injuries and damages alleged herein were a proximate result of these defects.

58. By engaging in the aforesaid conduct, Defendant is strictly liable to Plaintiff.

59. As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered severe physical injuries and has endured substantial pain and suffering, including but not limited to significant vision problems in his right eye. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## THIRD CAUSE OF ACTION - BREACH OF EXPRESS WARRANTY

60. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein

61. Defendant expressly warranted to Plaintiff that the subject product was safe and fit for use by consumers and users for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

62. At the time of the making of the express warranties, Defendant knew or should have known of the purpose for which the subject product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

63. At the time of the making of the express warranties, Defendant knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in

that the subject product was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

    64.    Plaintiff purchased and used the subject product for its intended purpose.

    65.    Plaintiff relied on Defendant's express warranties.

    66.    Defendant breached said express warranties in that the subject product was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff suffered severe physical injuries and has endured substantial pain and suffering, including but not limited to significant vision problems in his right eye. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

### FOURTH CAUSE OF ACTION - BREACH OF IMPLIED WARRANTIES

    67.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

    68.    Defendant designed, manufactured, marketed, distributed, supplied and sold the subject product.

    69.    At the time that Defendant manufactured, marketed, distributed, supplied, and/or sold the subject product, it knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

    70.    Plaintiff purchased and used the subject product for its intended purpose.

    71.    Due to Defendant's wrongful conduct, as alleged herein, the Plaintiff could not have known about the nature of the risks and side effects associated with the subject product until

after he used it.

72.     Contrary to the implied warranty for the subject product, the subject product was not of merchantable quality and was not safe or fit for its intended uses and purposes.

73.     As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff suffered severe physical injuries and has endured substantial pain and suffering, including but not limited to significant vision problems in his right eye. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## FIFTH CAUSE OF ACTION - MISREPRESENTATION

74.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

76.     The Defendant misrepresented the safety of the subject product and fraudulently, intentionally, recklessly or negligently concealed material adverse information regarding the safety of the subject product when it had a duty to disclose such information to the consuming public, including to Plaintiff.

77.     The Defendant made false or misleading statements and omissions about the safety of the subject product in its labeling, advertising, promotional materials, and other marketing efforts.

78.     The Defendant made these misrepresentations and actively concealed adverse information at a time when it knew, or should have known because of its superior position of knowledge, that the subject product had defects, dangers, and characteristics which were other than

12

Defendant represented to the public, including to Plaintiff.

79.     The facts misrepresented or not fully disclosed were material.

80.     The Defendant made these misrepresentations and actively concealed this information with the intention that Plaintiff, and the consuming public, would rely on the misrepresentations or omissions in selecting the subject product for purchase and use.

81.     The Defendant should have reasonably foreseen that Plaintiff was likely to rely on the facts misrepresented or not disclosed.

82.     Plaintiff reasonably relied on and were induced by Defendant's misrepresentations and/or active concealment in selecting and using the subject product.

83.     Plaintiff sustained injuries and losses as a direct and proximate result of Defendant's misrepresentations or active concealment of information.

84.     The Defendant's conduct was so willful, wanton, malicious, and reckless as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury, and therefore warrants punitive damages.

85.     As a result of the foregoing acts and omissions, Plaintiff suffered severe physical injuries and has endured substantial pain and suffering, including significant vision problems in his right eye. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against the Defendant as follows:

a.      Awarding actual damages to the Plaintiff incidental to Plaintiff's purchase and use of Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution in

13

        an amount to be determined at trial;

b.     Awarding treble and/or punitive damages to the Plaintiff

c.     Awarding pre judgment and post judgment interest to the Plaintiff;

d.     Awarding the costs and the expenses of this litigation to the Plaintiff;

e.     Awarding reasonable attorneys' fees and costs to the Plaintiff as provided by law; and

f.     Granting all such other relief as the Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all triable issues.


Dated:  June 10, 2008            Respectfully submitted,

                                               HISSEY KIENTZ, LLP


                                               /s/ David L. Friend
                                             David L. Friend
                                             Texas Bar No. 00796583
                                             Kathleen K. McGinn
                                             California Bar No. 177090
                                             9442 Capital of Texas Highway N., Suite 400
                                             Austin, Texas 78759
                                             512-320-9100
                                             512-320-9101 (Fax)

                                             ATTORNEYS FOR THE PLAINTIFF